UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT SIMPSON,<br>      Petitioner,<br><br>v.<br><br>DAVID L. WINN, Warden,<br>Federal Medical Center,<br>Devens,<br>      Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 04-40215-DPW

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PETITION
FOR WRIT OF HABEAS CORPUS**

The respondent, David L. Winn, Warden for the Federal
Medical Center Devens (FMC Devens), Ayer, Massachusetts,
respectfully requests that this Court dismiss the above-captioned
matter as the petitioner has failed to exhaust his administrative
remedies as required by the Prison Litigation Reform Act[1] (PLRA)
and because the petitioner lacks a Constitutionally protected
liberty interest in his Bureau of Prisons custody level or
institutional location.

**SUMMARY OF FACTS**

The petitioner, Robert Simpson, Reg. No. 10347-052, is a
federal inmate who is currently incarcerated at the Federal
Correctional Institution at Ray Brook, New York (FCI Ray Brook).
On June 4, 2002, he was sentenced in the United States District
Court for the Northern District of New York to a forty-six (46)

---

[1]42 U.S.C. § 1997e (1995).

month term of incarceration, based upon a term of eighteen (18) months on Count 1, for Conspiracy to Distribute and to Possess With Intent to Distribute Cocaine Base, Cocaine, and Marijuana, a violation of 21 U.S.C. §846; and twenty-eight (28) months on Count 3, for Use and Carry a Firearm During and in Relation to a Drug Trafficking Crime, a violation of 18 U.S.C. §924 (c), issued consecutively and followed by three (3) years of supervised release.[2]  Assuming the petitioner is granted all Good Conduct Time available to him under 18 U.S.C. § 3624 (b), his projected satisfaction date on this docket is November 16, 2005.[3] In the event that all of his remaining Good Conduct Time is disallowed, his full term expiration date is May 15, 2006.[4]

    On or about June 24, 2002, an initial designation was completed on the petitioner.[5]  At that time, the petitioner was designated to FMC Devens as a Low Security Level inmate.[6]  The petitioner subsequently voluntarily surrendered at FMC Devens on

---

[2]<u>See</u> Exhibit 1, the Declaration of Patrick Ward (Ward Decl.), Document 1C, Judgment and Commitment Order.

[3]<u>See</u> Ward Decl., Document 1A, Sentence Monitoring Computation Data.

[4]<u>Id.</u>

[5]<u>See</u> Ward Decl., Document 1D, Security/Designation Data.

[6]<u>Id.</u>

July 23, 2002.[7]

On or about September 15, 2004, a Request For Transfer form was completed on the petitioner.[8]  This request, prepared by the petitioner's Case Manager and approved by his Unit Manager, referred the petitioner for a transfer to the Federal Prison Camp at McKean (FPC McKean), Pennsylvania, or any appropriate minimum security level facility.[9]  This request was signed by the respondent and forwarded to the Northeast Regional Director of the BOP.  Subsequently, on or about September 27, 2004, the Northeast Regional Office approved a transfer of the petitioner from FMC Devens to FPC McKean.[10]  That transfer was changed one week later, however, on October 5, 2004, by the Northeast Regional Office to FCI Ray Brook as a Work Cadre Inmate.[11]

Following the petitioner's re-designation to FCI Ray Brook, he was transferred from FMC Devens on or about November 9, 2004, and, following hold-overs in Brooklyn, New York and Lewisburg,

---

[7]See Ward Decl., Document 1A, Sentence Monitoring Computation Data.

[8]See Ward Decl., Document 1E, Request for Transfer.

[9]Id.

[10]See Ward Decl., Document 1F, Clearance Data.

[11]Id.

3

Pennsylvania, he arrived at FCI Ray Brook on November 18, 2004.[12]

The petitioner has filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, as well as a Motion for Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction.  He challenges his recent re-designation from FMC Devens to FCI Ray Brook, alleging that the BOP failed to follow it's own policy and that this re-designation "creates a quantum difference in relation to the respective level of confinement."[13]  As relief, the petitioner seeks to enjoin his transfer from FMC Devens to FCI Ray Brook.[14]

On or about November 4, 2004, this Court issued a Memorandum and Order denying the petitioner's request for a temporary restraining order and instructing the respondent to file an answer or other responsive pleading within twenty-eight days of receipt of this order.

The Court's Memorandum and Order was received by the BOP via certified mail on or about November 8, 2004.[15]

**ARGUMENT**

**I.   Standard of Review for a Motion to Dismiss**

---

[12]See Ward Decl., Document 1G, Inmate History, Admission/ Release.

[13]See Petition ¶ 1.

[14]See Petition ¶ 16.

[15]See Ward Decl. ¶ 3.

A motion to dismiss challenges the sufficiency of the complaint without being subjected to discovery or other costly and time-consuming proceedings.  Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 738 (9th Cir. 1987).  As is customary, the factual allegations of a complaint are taken as true.  E.g., Edwards v. John Hancock Mutual Life Insurance Co., 973 F.2d 1027, 1028 (1st Cir. 1992); Coyne v. City of Somerville, 972 F.2d 440, 443 (1st Cir. 1992).  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); McDonald v. Commonwealth of Massachusetts, 901 F. Supp. 471, 475 (D. Mass. 1995).

The complaint of a *pro se* plaintiff should be read with an indulgent, and not a hypercritical, eye.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  But, "a petitioner who elects to proceed *pro se* must comply with the applicable procedural and substantive rules of law."  Lefebre v. C.I.R., 830 F.2d 417, 419 (1st Cir 1987).

## II.  The Petitioner Failed to Exhaust His Available Administrative Remedies.

The petitioner challenges his recent re-designation from FMC Devens to FCI Ray Brook, alleging that the BOP failed to follow it's own policy and that this re-designation "creates a quantum difference in relation to the respective level of confinement."[16] The petitioner's allegations should be dismissed because he

---

[16]See Petition ¶ 1.

failed to exhaust his available administrative remedies on this issue prior to filing this civil action.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). The term "prison conditions" refers to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). In Booth v. Churner, 532 U.S. 731 (2001), the Supreme Court held that Congress intended a prisoner to invoke "such administrative remedies as are available" in the prison, without regard to whether the grievance procedure affords money damage relief, before suit may be filed. Id. at 734; see also Nyhuis v. Reno, 204 F.3d 65, 78 (3d Cir. 2000)(PLRA makes exhaustion mandatory in all cases); Alexander v. Hawk, 159 F.3d 1321, 1328 (11th Cir. 1998)(futile and inadequate nature of administrative remedy did not preclude mandatory exhaustion requirement of the PLRA). Thus, "[f]or litigation within § 1997e(a)'s compass, Congress has replaced the 'general rule of non-exhaustion' with a general rule of exhaustion." Porter v.

<u>Nussle</u>, 534 U.S. at 525 n.4.[17]

The BOP has established an administrative remedy procedure whereby inmates can seek formal review of any complaint regarding any aspect of their imprisonment. The petitioner had available to him the four step procedures set forth in the BOP's Administrative Remedy Program. 28 C.F.R. § 542. The BOP regulations provide "a process through which inmates may seek formal review of an issue which relates to any aspect of their confinement... if less formal procedures have not resolved the matter." 28 C.F.R. § 542.10. In accordance with the BOP's Administrative Remedy Program, an inmate shall first attempt informal resolution of his complaint by presenting the issue informally to staff, and staff must attempt to resolve the issue. 28 C.F.R. § 54213(a). If the complaint cannot be resolved informally, the inmate may submit a formal written Administrative Remedy Request to the Warden, on a designated form, within twenty days of the event that triggered the inmate's complaint. 28 C.F.R. § 542.14(a). If the inmate's formal request is denied, the inmate may submit an appeal to the appropriate Regional Director of the BOP, within twenty calendar days of the date of

---

[17]<u>See also</u>, <u>Medina-Claudio v. Rodriquez-Mateo</u>, 292 F.3d 31, 35-36 (1st Cir.2002) ("[s]ection 1997e(a) mandates that '[n]o action shall be brought . . . until [the prisoner's] administrative remedies . . . are exhausted.' This language clearly contemplates exhaustion *prior* to the commencement of the action as an indispensable requirement. Exhaustion subsequent to the filing of suit will not suffice.") (emphasis in original).

the Warden signed the response.  28 C.F.R. § 542.15(a).  A
negative decision from the Regional Director may in turn be
appealed to the General Counsel's office (in the Central Office)
within thirty calendar days of the date the Regional Director
signed the response.  <u>Id.</u>  No administrative remedy appeal is
considered to have been fully exhausted until considered by the
Bureau of Prisons' Central Office.  28 C.F.R. §§ 542.14-542.15.
This Program is available to inmates confined at FMC Devens, as
well as FCI Ray Brook, and would include any issues surrounding
custody level, transfer, or re-designation determinations.[18]

In the ordinary course of business, computerized indexes of
all administrative requests and appeals filed by inmates are
maintained in the BOP's computerized data base so rapid
verification may be made as to whether an inmate has exhausted
the administrative remedy process on a particular issue.  Also,
hard copies of all administrative remedies that are filed through
the Regional and Central Office levels are maintained at the
Northeast Regional Office, so a review of the issues raised in
each administrative remedy could be made.

On November 29, 2004, Patrick Ward, Attorney Advisor with

_____

[18]Pursuant to 28 C.F.R. § 542.14, inmates raising "sensitive"
issues as well as inmates challenging disciplinary actions of a
discipline hearing officer (DHO), are excused from filing
administrative remedies at the institutional level.  They may
access the administrative remedy system through submission of a
Regional Administrative Remedy Appeal.

8

BOP, ran a SENTRY search to determine if inmate Robert Simpson, Reg. No. 10347-052, had filed any administrative remedy claims under the Administrative Remedy Program in regard to the allegations in his petition.[19]  A review of his Administrative Remedy Record revealed that, while he has utilized the administrative remedy process to file  administrative remedy submissions on other issues, he has not used this process to raise a single remedy submission on the issue presented in this petition.[20]

Accordingly, the petitioner's Petition for Writ of Habeas Corpus should be dismissed as the petitioner has failed to exhaust his administrative remedies.

## III. The Petitioner Lacks a Constitutionally Protected Liberty Interest in his BOP Custody Level or Institutional Location.

A liberty interest in a prisoner may arise either under the Due Process Clause of the Constitution itself or it may arise from certain statutes or regulations.  In Sandin v. Connor, 515 U.S. 472 (1995), the Supreme Court explained that liberty interests created by prison regulations are limited to instances where such regulations impose atypical and significant hardship on an inmate in relation to the ordinary incidents of prison

---

[19]See Ward Decl. ¶ 6.

[20]Id. A copy of the Administrative Remedy Generalized Retrieval screen for the petitioner, Robert Simpson, Reg. No. 10347-052, is attached to the Ward Decl. as Document B.

9

life.  <u>Id.</u> at 484.  In the instant case, the petitioner alleges
that his designation to a medium security institution creates a
"quantum difference" in the level of his confinement and that he
should be confined in the "least restrictive environment."[21]
However, he has failed to establish how the designation to a
different facility has or will cause him to suffer any atypical
and significant hardship over and above the ordinary incidents of
prison life.

    The petitioner's challenge to the re-designation by his unit
team to a different custody level institution is a challenge to
his assigned institution or to his custody classification.  It is
well settled that in general, an inmate does not have a liberty
interest to a particular security classification.  <u>Sandin</u>, <u>supra</u>
at 486; <u>see</u> <u>also</u> <u>Olim v. Wakinekona</u>, 461 U.S. 238, 245 (1983);
<u>Meachum v. Fano</u>, 427 U.S. 215, 224-25 (1976);  <u>Montanye v.</u>
<u>Haymes</u>, 427 U.S. 236, 243 (1976); <u>Moody v. Daggett</u>, 429 U.S. 78,
88 n. 9 (1976); <u>Newell v. Brown</u>, 981 F.2d 880, 883 (6th
Cir.1992); <u>Beard v. Livesay</u>, 798 F.2d 874, 876 (6th Cir.1986).
Moreover, there is no right in the Constitution for an inmate to
be assigned to a particular institution or program.  <u>Young v.</u>
<u>Quinlan</u>, 960 F.2d 351, 358 n. 16 (3d Cir. 1992).

    In <u>Moody v. Daggett</u>, 429 U.S. 78 (1976), the Supreme Court
addressed a challenge to the impact of a detainer on prison

---

[21]<u>See</u> Petition ¶ 1.

10

programming.  The Court noted:

> We have rejected the notion that every state action
> carrying adverse consequences for prison inmates
> automatically activates a due process right. In <u>Meachum
> v. Fano</u>, 417 U.S. 215... (1976), for example, no due
> process protections were required upon the
> discretionary transfer of state prisoners to a
> substantially less agreeable prison, even where that
> transfer visited a "grievous loss" upon the inmate.
> The same is true of prisoner classification and
> eligibility of rehabilitative programs in the federal
> system.  Congress has given federal prison officials
> full discretion to control these conditions of
> confinement, 18 U.S.C. §4081, and petitioner has no
> legitimate statutory or constitutional entitlement
> sufficient to invoke due process.

429 U.S. at 88 n.9.

In <u>Pugliese v. Nelson</u>, 617 F.2d 916 (2d Cir. 1980), the
Second Circuit stated that the Attorney General has "complete and
absolute discretion with respect to the incarceration,
classification and segregation of lawfully convicted prisoners."
<u>Id.</u> at 923.  The authority of the Attorney General under these
statutes has been delegated to the BOP.  28 C.F.R. § 0.96.

As long as the conditions or degree of confinement fall
within the sentence imposed and do not otherwise violate the
Constitution, the Due Process Clause does not bring the
prisoner's custody status within the purview of judicial
scrutiny.  <u>See</u> <u>Montanye v. Haymes</u>, 427 U.S. 236, 242 (1976).  In
this instance, the petitioner did not suffer an atypical or
significant hardship in the context of prison life merely by
being transferred from FMC Devens to FCI Ray Brook.  In fact, the

11

petitioner's transfer to FCI Ray Brook was based upon a request to transfer him to a minimum security level facility.[22]

Because the petitioner had no entitlement to a particular custody level and has no right to be assigned to a particular institution, no protected liberty interests cognizable on federal habeas review have been implicated.  Accordingly, the petitioner's challenge to his re-designation must fail and his Petition for Writ of Habeas Corpus should be dismissed.

### CONCLUSION

For all of the aforementioned reasons, the respondent respectfully suggests that the complaint should be dismissed.

Respectfully submitted,

UNITED STATES OF AMERICA
By its attorney,

MICHAEL J. SULLIVAN
United States Attorney

Dated: December 3, 2004   By:   /S/ Christopher R. Donato
Christopher R. Donato
Assistant U.S. Attorney
U.S. Attorney's Office
John Joseph Moakley Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

---

[22] See Ward Decl. Document 1E, Request For Transfer.

**CERTIFICATE OF SERVICE**

I certify that on this day a true copy of the respondent's Memorandum in Support of the Motion to Dismiss was served by first class mail, postage prepaid, upon the *pro se* petitioner at the following address:

Robert Simpson
#10347-052
FMC Devens
P.O. Box 879
Ayer, MA 01432

Dated: December 3, 2004         /S/ Christopher R. Donato
                               Christopher R. Donato
                               Assistant U.S. Attorney

13